# United States District Court
# Central District of California

| | |
|---|---|
| JANE DOE,<br><br>              Plaintiff,<br><br>    v.<br><br>PASADENA HOSPITAL<br>ASSOCIATION, LTD. et al.,<br><br>              Defendants. | Case № 2:18-cv-09648-ODW (MAAx)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT [34] [46] [47] [50]** |

## I. INTRODUCTION

Defendants the Pasadena Hospital Association, LTD. d/b/a Huntington Memorial Hospital ("Hospital"), Doctor Patrick Sutton ("Sutton"), and the Medical Staff of Huntington Memorial Hospital ("Medical Staff") (collectively "Defendants") move to dismiss and strike Plaintiff's First Amended Class Action Complaint ("Motions"). (ECF Nos. 34, 46, 47, 50.) For the reasons discussed below, the Court **GRANTS** Defendants' Motions.[1]

## II. BACKGROUND

On January 10, 2019, Plaintiff Jane Doe ("Plaintiff"), on behalf of herself and all others similarly situated, filed a First Amended Class Action Complaint ("FAC")

---

[1] After considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

against Defendants. (FAC, ECF No. 21.) She brings this nationwide class action on behalf of individuals who were sexually abused, harassed, and molested by Sutton while they were patients in the care of Sutton, Hospital, and Medical Staff. (FAC ¶¶ 3, 72.) As part of her nationwide class action suit, Plaintiff alleges that there are thousands of class members. (FAC ¶ 75(c).)

Since 1989, Sutton has worked as an obstetrician-gynecologist for Hospital and Medical Staff. (FAC ¶ 24.) Hospital is a California corporation and owner of the Huntington Memorial Hospital ("HMH"). (FAC ¶ 52.) Medical Staff is responsible for the quality of medical care at HMH, and subject to the authority of Hospital's Board of Directors. (FAC ¶ 54.)

Plaintiff alleges that, between 2008 and 2010, Sutton examined her approximately six times and she "immediately got the impression that [Sutton] was aggressively flirting with her, and that impression never ceased." (FAC ¶¶ 1–2, 7.) During each medical examination: Sutton made an aggressive and intense inspection of Plaintiff's body; Sutton would touch Plaintiff's breasts; Sutton would make grossly inappropriate remarks while his fingers were inserted in Plaintiff's vagina; a chaperone was never present; and Sutton never wore gloves. (FAC ¶¶ 4–8.)

During Plaintiff's first examination in 2008, Sutton did not wear gloves, fingered her vagina aggressively and inappropriately, squeezed her breasts extremely hard, and told her he wanted "to make sure milk comes out." (FAC ¶ 9.) Sutton also told her that "[i]f you were not my patient, I would fuck you," and asked "[i]f you were not my patient, would you fuck me?" (FAC ¶ 10.) On the same day, Plaintiff called Hospital "and asked with whom she could file a claim regarding Dr. Sutton's behavior." (FAC ¶ 11.) Plaintiff was told to visit Sutton the next day, and again, she endured much of the same conduct but this time the exam was so "aggressive and prolonged" that Plaintiff said "[w]hat the hell was THAT!?" (FAC ¶¶ 12–13.)

Two years later, Sutton again examined Plaintiff and repeated much of the same conduct, Plaintiff states that during an examination, Sutton made "her feel like he was

'banging' her vagina with his fingers," told her that she had "a nice vagina and asshole," and a few days later, he again asked "if she would fuck him." (FAC ¶¶ 15–16.) At another visit, Sutton squeezed Plaintiff's breasts and nipples so hard that she said, "I have never been to an OB and been felt up like this," to which Sutton replied, "[o]h, this just part of the exam." (FAC 18.) Plaintiff further alleges that Sutton misrepresented that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice, thereby concealing that Plaintiff's had a cause of action against him. (FAC ¶ 65). Plaintiff alleges that she placed trust in Sutton as a physician working for a credible hospital, but nevertheless "suspected that his behavior was strange." (FAC ¶ 22.)

Plaintiff's suspicions were later confirmed. For example, a patient named Amanda told Plaintiff that Sutton was always inappropriate with her and even attempted to kiss her. (FAC ¶ 20.) In 2014, an unnamed gynecologist at Hospital told Plaintiff that "everyone knows that he is a sick bastard and the hospital has not done anything." (FAC ¶ 21.) However, Plaintiff alleges that she only became of aware of her causes of actions in October 2018, when the L.A. Times published a report about Sutton's misconduct. (FAC ¶ 70.)

Plaintiff further alleges that Hospital and Medical Staff not only failed to take appropriate steps to protect Plaintiff from Sutton's misconduct, worse, they affirmatively concealed Sutton's sexual abuse for decades. (FAC ¶¶ 43–44, 68.) For example, Hospital and Medical Staff "implemented various measures to conceal Sutton's actions," which included: permitting him to remain in a position of authority and trust, scheduling patients for gynecological examinations with him, and granting him unfettered and unsupervised access to patients. (FAC ¶ 68.)

Defendants now move to dismiss the FAC and strike Plaintiff's class action claims. As Defendants' arguments overlap substantially, the Court addresses the Motions together.

## III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. DISCUSSION

Parties move and oppose on various grounds; however, the Court limits the discussion to whether tolling saves Plaintiff's claims and whether Plaintiff has standing to assert class actions claims, as the Court finds these issues dispositive. Accordingly, the Court now turns to these two legal disputes.

A.  **Statute of Limitations and Tolling**

Defendants assert that all of Plaintiff's claims are time-barred and no tolling theory applies. (*See* Hospital's Mot. to Dismiss ("Hospital's Mot."), ECF No. 46; Medical Staff's Mot. to Dismiss ("Medical Staff's Mot."), ECF No. 34; Sutton's Mot. to Dismiss ("Sutton's Mot."), ECF No. 50.) However, Plaintiff argues that the doctrines of fraudulent concealment and delayed discovery toll all her claims. (*See* Pl.'s Opp'n to Hospital's Mot. ("Opp'n Hospital"), ECF No. 53; Pl.'s Opp'n to Medical Staff's Mot. ("Opp'n Medical Staff") ECF No. 56; Pl.'s Opp'n to Sutton's Mot. ("Opp'n Sutton") ECF No. 55.)

Generally, a statute of limitations does not begin to run until a cause of action accrues, which occurs at "the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id*. at 807. Whereas, fraudulent concealment tolls the applicable statute of limitations for the period during which the plaintiff does not discover and could not reasonably discover her claim due to "the defendant's fraud in concealing a cause of action against him." *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994).

The majority of Plaintiff's claims are subject to a three-year limitations period, except for her "unfair competition or business practices" claim, which is subject to a four-year limitations period.[2] Here, Plaintiff alleges Sutton sexually molested her from 2008 to 2010, accordingly, without the benefit of tolling the accrual date for her

---

[2] The statute of limitations for each claim against Defendants is as follows: (1) Unruh Act, 2 years from the alleged wrongful act, (Cal. Code Civ. Proc. § 335.1.) (3) Sexual Harassment, 2 years from the alleged wrongful act; (Cal. Code Civ. Proc. § 335.1.) (4) Violation of the Bane Act, 1 year. (*West Shield Investigations & Security Consultants v. Superior Court* 82 Cal. App. 4th 935, 951–954.) (4) Gender Violence, 3 years. (Cal. Civ. Code § 52.4(b).) (8) Constructive Fraud, 3 years. (Cal. Civ. Code § 1573, Cal. Civ. Proc. § 338(d).) (9) Negligence, 1 year. (Cal. Civ. Proc. § 340.5.) (11) Negligent Failure to Warn, Train, and/or Educate, 1 year. (Cal. Civ. Proc. §340.5.) (12) Intentional Infliction of Emotional Distress, 1 year. (Cal. Civ. Proc. § 340.5.) (13) Unfair Business Practices, 4 years. (Cal. Bus. & Prof. § 17208.)

claims is 2010. *Fox*, 35 Cal. 4th at 806 (a cause of action accrues at "the time when the cause of action is complete with all of its elements.") Therefore, Plaintiff was required to assert her claims between 2013 and 2014. However, Plaintiff argues that both fraudulent concealment and the delayed discovery rule tolls the statute of limitations.

### 1. *Fraudulent Concealment*

Plaintiff asserts the doctrine of fraudulent concealment tolls the statute of limitation on her claims for two reasons. First, Sutton concealed the existence of Plaintiff's claims against all Defendants by misrepresenting that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice. (Opp'n Sutton 10.) Second, Hospital and Medical Staff took affirmative action to conceal Sutton's propensity to sexually abuse female patients and his past sexual abuses. (Opp'n Medical Staff 6–10; Opp'n Hospital 9–12; Opp'n Sutton 12.) Accordingly, Plaintiff asserts that the doctrine of fraudulent concealment tolls all of her claims. (Opp'n Sutton 11.) However, Defendants argue that fraudulent concealment does not toll Plaintiff's claims because she had actual or presumptive knowledge of facts sufficient to place her on inquiry notice. (Hospital's Mot. 28–29; Medical Staff's Reply 1–2, ECF No. 60; Sutton's Reply 5, ECF No. 57.)

"It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations." *Bernson*, 7 Cal. 4th at 931. To plead fraudulent concealment, a plaintiff must allege: (1) "when the fraud was discovered;" (2) "the circumstances under which it was discovered;" (3) "that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts to put [her] on inquiry;" and (4) that, "in the exercise of reasonable diligence, the facts could not have been discovered at an earlier date." *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974).

However, the doctrine "does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential

claim." *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453, 1460 (1986). Thus, concealment will not toll the period if discovery has occurred. *Young v. Haines*, 41 Cal. 3d 883, 901 (1986). Accordingly, "the question is not whether a plaintiff was on notice of some wrongdoing." *Migliori v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 976, 984 (C.D. Cal. 2000). "Instead, the question is whether the plaintiff had knowledge of facts, or should have known about facts, that placed him or her on notice of the specific cause of action." *Id.* (collecting cases).

Thus, "when a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, [and may be] properly decided as a matter of law only if the evidence (or . . . the allegations in the complaint . . .) can support only one reasonable conclusion." *Stella v. Asset Mgmt. Consultants, Inc.*, 8 Cal. App. 5th 181, 193 (2017).

Here, at issue is whether Plaintiff "had [] actual or presumptive knowledge of facts sufficient to put [her] on inquiry." *Baker*, 39 Cal. App. 3d at 321. The allegations in the complaint support only one reasonable conclusion—Plaintiff knew the necessary facts to place her on notice of Sutton's tortious conduct. For instance, at Plaintiff's first examination in 2008, Sutton did not wear gloves, fingered her vagina aggressively and inappropriately, squeezed her breasts extremely hard, and told her that "[i]f you were not my patient, I would fuck you," and asked "[i]f you were not my patient, would you fuck me?" (FAC ¶¶ 9–10.) Then, Sutton misrepresented to Plaintiff that his conduct was legitimate and conformed to accepted medical practice. (FAC ¶ 65.) Nevertheless, Plaintiff still called Hospital "and asked with whom she could file a claim regarding Dr. Sutton's behavior." (FAC ¶ 11.) These facts as alleged support only one conclusion, that Plaintiff had knowledge of facts necessary to put her on notice of her sexual assault, battery, and harassment claims. *See generally Rita M.*, 187 Cal. App. 3d at 1460.

Regardless, subsequent instances alleged in the FAC further demonstrate that Plaintiff knew of the necessary facts to acquire notice for the remainder of her claims. For example, Plaintiff alleges that a subsequent examination was so "aggressive and prolonged" that she exclaimed "[w]hat the hell was THAT!?" (FAC ¶¶ 12–13.) Two years later in 2010, during an examination, Sutton made "her feel like he was 'banging' her vagina with his fingers." (FAC ¶ ¶ 15–16.) At another visit, Plaintiff asserted that she had "never been to an OB and been felt up like this." (FAC ¶ 18.) Although Plaintiff alleges that she placed trust in Sutton, she also alleges "that she . . . suspected that his behavior was strange." (FAC ¶ 22.)

Moreover, another patient told Plaintiff that Sutton was always inappropriate with her and even attempted to kiss her. (FAC ¶ 20.) In 2014, an unnamed gynecologist at Hospital told her that "everyone knows that he is a sick bastard and the hospital has not done anything." (FAC ¶ 21.) Accordingly, there is only one reasonable conclusion that the Court may reach based on Plaintiff's allegations: as of at least 2014, Plaintiff not only knew of Sutton's sexual misconduct but also that Hospital and Medical Staff had done nothing to address it. *See generally Bernson*, 7 Cal. 4th at 932–35 (once a plaintiff is aware of her injury, the applicable limitations period normally affords sufficient opportunity to identify all wrongdoers).

While disturbing, these allegations taken as true demonstrate that as a matter of law Plaintiff knew the necessary facts to place her on notice of each of her claims. Thus, the Court need not blindly accept Plaintiff's allegation that she only became aware of Sutton's misconduct in 2018 because the factual allegations directly contradict such an assertion. *See Sprewell*, 266 F.3d at 988 (a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences). Therefore, fraudulent concealment is inapplicable.

2. *Delayed Discovery Rule*

In the alternative, Plaintiff argues that the delayed discovery rule tolls her claims. However, for many of the same reasons as discussed above, Plaintiff's

argument fails and the discovery rule does not toll the statute of limitations on Plaintiff's claims.

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807. To benefit from the discovery rule, a plaintiff "must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808. To determine when the limitations period begins to run under the discovery rule, courts "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Id.* at 807. Accordingly, "[a] plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for'" its "'generic' elements of wrongdoing, causation, and harm." *Id.*

Although Plaintiff sufficiently alleges both of the discovery rule prongs, Defendants assert that the facts as alleged in the FAC impute an awareness of wrongfulness and, therefore, the delayed discovery rule is inapplicable. (Hospital's Mot. 25–28; Medical Staff's Mot. 12–16; Sutton's Mot. 11–14.) Accordingly, at issue is whether Plaintiff's allegations demonstrate she was aware or had reason to suspect Sutton of wrongdoing, causation, and harm.

The FAC is rich with factual allegations which demonstrate Plaintiff had reason to suspect a factual basis for all of her claims. For instance, after her first examination with Sutton, Plaintiff called Hospital "and asked with whom she could file a claim regarding Dr. Sutton's behavior." (FAC ¶ 11.) Such an allegation demonstrates that Plaintiff suspected a type of wrongdoing committed against her by Sutton sufficient to lodge a complaint. Another instance indicating Plaintiff's suspicions is Plaintiff's allegation that a subsequent examination was so "aggressive and prolonged" that she exclaimed "[w]hat the hell was THAT!?" (FAC ¶¶ 12–13.) Lastly, an unnamed gynecologist at Hospital told Plaintiff that "everyone knows that he is a sick bastard and the hospital has not done anything." (FAC ¶ 21.) Accordingly, the alleged facts

9

confirm that Plaintiff should have suspected wrongdoing, causation, and harm; therefore, the discovery rule does not toll the statute of limitations. *Young*, 41 Cal. 3d at 901 (concealment by a physician will not toll the limitations period if discovery has occurred).

As neither fraudulent concealment nor the discovery rule tolls Plaintiff's claims, consequently, Plaintiff's claims are time-barred. Accordingly, there are simply no additional facts consistent with the FAC that Plaintiff may allege to cure her tolling allegations. Therefore, Defendants' Motion are **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**B.    Class Action Claims**

Medical Staff and Hospital also move to dismiss Plaintiff's class claims. (*See* Hospital's Mot. to Strike, ECF No. 47.) Defendants argue Plaintiff lacks standing to seek relief on behalf of herself or any other member of the class. (Hospital's Mot. to Strike 16; Medical Staff's Mot. 25–26). In opposition, Plaintiff does not offer a meaningful response to Defendants standing argument. (*See* Opp'n to Hospital's Mot. to Strike, ECF No. 54; Opp'n Medical Staff.)

Our law makes clear, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of [herself] or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Accordingly, Ninth Circuit precedent holds that "standing is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (quoting *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003)).

Here, Plaintiff lacks standing to bring this class action because all of Plaintiff's claims are time-barred by the applicable statute of limitations. Therefore, Plaintiff may not seek relief on behalf of herself or any other member of the class and the court need not reach the class action issue. *See O'Shea*, 414 U.S. at 494; *NEI Contracting*

*& Eng'g, Inc.*, 926 F.3d at 532. Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss and to Strike Plaintiff's class claims.

C.  **Leave to Amend**

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court has dismissed all of Plaintiff's claims with prejudice, either because the claims are time-barred or because the Court finds there are simply no additional facts consistent with the FAC that Plaintiff may allege to cure the deficiency. *Lopez,* 203 F.3d at 1127. Accordingly, leave to amend is **DENIED**.

V.  **CONCLUSION**

For the reasons discussed above, the Court **GRANTS** Defendants' Motions to Dismiss Plaintiff's First Amended Class Action Complaint (ECF Nos. 34, 46, 50.) and **GRANTS** Defendant's Motion to Strike Plaintiff's class action claims (ECF No. 47.) Plaintiff's claims are **DISMISSED with prejudice**. The Court will concurrently issue Judgment.

**IT IS SO ORDERED.**

March 31, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**